[Cite as *State v. Lucas*, 2011-Ohio-3935.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| BENJAMIN LUCAS | : | Case No. 10AP120047 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Apeal from the Court of Common Pleas,
                                  Case No. 2009CR080209



JUDGMENT:                         Affirmed



DATE OF JUDGMENT ENTRY:           August 5, 2011



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

PATRICK J. WILLIAMS                       JASON L. JACKSON
125 East High Avenue                      P.O. Box 308
New Philadelphia, OH  44663               Uhrichsville, OH  44683

*Farmer, P.J.*

{¶1} On August 19, 2009, the Tuscarawas County Grand Jury indicted appellant, Benjamin Lucas, on one count of breaking and entering in violation of R.C. 2911.13, two counts of safecracking in violation of R.C. 2911.31, one count of theft in violation of R.C. 2913.02, one count of petty theft in violation of R.C. 2913.02, one count of grand theft in violation of R.C. 2913.02, and one count of burglary in violation of R.C. 2911.12. Said charges arose from the breaking and entering and thefts from Stoney Point Lumber and a private residence owned by Walter and Karen McPherson.

{¶2} A jury trial commenced on October 5, 2010. The jury found appellant guilty as charged. By judgment entry filed November 17, 2010, the trial court sentenced appellant to an aggregate term of three years in prison.

{¶3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶4} "THE CONVICTION OF BENJAMIN LUCAS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶5} "BENJAMIN LUCAS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING HIS TRIAL."

I

{¶6} Appellant claims his convictions were against the manifest weight of the evidence as the chief witnesses against him, David Cleveland and Ashley Baker, lacked

credibility, and the only evidence against him concerning the Stoney Point Lumber break-in was limited to safecracking. We disagree.

{¶7} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175. See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶8} Appellant was convicted on one count of breaking and entering in violation of R.C. 2911.13 which states the following:

{¶9} "(A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.

{¶10} "(B) No person shall trespass on the land or premises of another, with purpose to commit a felony."

{¶11} Appellant was also convicted on two counts of safecracking in violation of R.C. 2911.31 which states, "(A) No person, with purpose to commit an offense, shall knowingly enter, force an entrance into, or tamper with any vault, safe, or strongbox."

{¶12} Appellant was also convicted on one count each of grand theft, petty theft, and theft in violation of R.C. 2913.02 which states:

{¶13} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶14} "(1) Without the consent of the owner or person authorized to give consent;

{¶15} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

{¶16} "(3) By deception;

{¶17} "(4) By threat;

{¶18} "(5) By intimidation."

{¶19} Lastly, appellant was convicted of burglary in violation of R.C. 2911.12 which states:

{¶20} "(A) No person, by force, stealth, or deception, shall do any of the following:

{¶21} "(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;

{¶22} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is

present or likely to be present, with purpose to commit in the habitation any criminal offense;

{¶23} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense;

{¶24} "(4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

{¶25} Appellant was convicted of breaking and entering into Stoney Point Lumber and the McPherson residence and the safe/lockbox contained therein.

### Stoney Point Lumber

{¶26} Mark Shrock, owner of Stoney Point Lumber, testified the lumber store was broken into between November 17 and 19, 2007. T. at 102-103. A safe that was nailed to a counter was ripped away. T. at 105. The safe contained business checks, personal checks made out to Mr. Shrock, business documents, and small envelopes with cash. T. at 106-107.

{¶27} David Cleveland, brother of Tim Cleveland who is appellant's longtime friend, testified that appellant admitted to him that "they [appellant and Tim] got a safe and they worked hard all night long and tore into the bottom of it." T. at 138. The contents included "business checks, checkbooks, receipts, little bit of change and little bit of dollars." Id. Appellant transported the safe in his mother's vehicle and opened it at her home. T. at 139-140. Appellant told David after the safe was opened, it was

thrown into the Tuscarawas River.  T. at 138.  This occurred close to Thanksgiving 2007.  Id.

{¶28}  Ashley Baker, appellant's girlfriend at the time of the incidents, overheard appellant, Tim, and her father, James Baker, discussing how to open the safe.  T. at 148.  This conversation occurred around Thanksgiving 2007.  Id.  They left to open the safe at appellant's mother's house after transporting it in her vehicle.  T. at 149.  After appellant returned, appellant told Ms. Baker that it took them all night to open the safe and they only found business checks and a little bit of money.  T. at 151.  He told her they "got rid" of the safe.  Id.  Appellant admitted he was part of the "safe job."  T. at 161.  Appellant told her they got the safe from the "Amish."  T. at 150.[1]

{¶29}  Upon review, we find sufficient evidence that appellant participated in the breaking and entering of Stoney Point Lumber by admitting "they got a safe" and the admission that they got it from the "Amish."  These statements to Ms. Baker and David are bolstered by the parallel testimony regarding the opening, contents, and disposal of the safe.

McPherson Residence

{¶30}  Karen McPherson testified sometime between December 27, 2007 and January 2, 2008, a lockbox containing $8,000 was taken from her home.  T. at 119.  Just prior to the discovery of the loss, the McPhersons were driving home and passed Tim's "smaller green car" driving slowly away from the general vicinity of their home.  T. at 121-122.  The car contained Tim and another individual.  T. at 122.  Tim did odd jobs for the McPhersons.  T. at 122-123.  Just prior to the break-in, Tim moved a computer

---

[1]Mr. Shrock, is Amish and his business is located in what is known as "Amish Country" in Sugarcreek, Ohio.  T. at 102, 216.

for the McPhersons from upstairs to the downstairs office where the lockbox was located. T. at 123-124. Tim was aware of the location of the lockbox. T. at 125. Nothing else in the home was disturbed or missing. T. at 126. As Mrs. McPherson stated, it looked like "[t]hey would have known exactly what they were looking for and where it was." Id.

{¶31} After this break-in, appellant and Tim appeared flush with money, although neither was employed. T. at 153. They invited Ms. Baker's father to accompany them to Wheeling, West Virginia to gamble. T. at 152. When Mr. Baker hesitated because he had little cash, appellant assured him " 'That's okay, we got it.' " Id.

{¶32} After the Wheeling trip, appellant had a "chunk of money." T. at 154. During "pillow talk" with Ms. Baker, appellant admitted that he and Tim got the money from the McPherson home. T. at 155. Appellant told Ms. Baker he was in the car being "lookout" while Tim went in and returned with the lockbox. T. at 156. There was $8,000 in the box and appellant received $3,200. Id. Appellant stated he was uneasy about the situation because the McPhersons had seen them "as they were coming down the road." T. at 157. They were driving Tim's "little green car." Id. Appellant watched Tim bust open the box while they were together after the break-in. T. at 163.

{¶33} We find appellant's admissions to be sufficient if the jury believed Ms. Baker.[2] One witness, believed by a jury, is sufficient to establish a fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.

{¶34} Upon review, we find no manifest miscarriage of justice.

{¶35} Assignment of Error I is denied.

---

[2]Ms. Baker's credibility was attacked on cross-examination as a cocaine, drug, and alcohol abuser. T. at 159-160.

II

{¶36} Appellant claims he was denied the effective assistance of trial counsel as his counsel failed to contact a witness who could have established an alibi defense for the Stoney Point Lumber break-in.  Appellant further claims he received bad advice from his counsel about not taking the stand and testifying in his own defense.  We disagree.

{¶37} The standard this issue must be measured against is set out in *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011.  Appellant must establish the following:

{¶38} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.  (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

{¶39} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."

{¶40} This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight."  *State v. Post* (1987), 32 Ohio St.3d 380, 388.

{¶41} There is only one mention of an alibi witness and that was during the sentencing hearing:

{¶42} "***The only person that could say where I was at on that night she moved away to Florida and I had no way to contact her until I got released to get ahold of her and find out if I could get her up here for a witness on my behalf and stuff.  It's been a long drawn out mess for a very short time that I was around those folks.***"  November 16, 2010 T. at 10.

{¶43} We find this is insufficient to establish in the record ineffective assistance of trial counsel on the issue of an alibi witness.

{¶44} Appellant further claims he was advised not to testify.  The record contains no information on this issue.  We note during a recess, defense counsel told the trial court he needed to talk to his client in order to determine if he would have any witnesses.  T. at 168.  The trial court then advised the jury of the following:

{¶45} "THE COURT: Ladies and gentlemen, when you were away for the recess I asked Mr. Williams if he was going to be presenting any more witnesses and he said no.  He asked that I admit into evidence the exhibits which have been marked, they're photographs, which have been marked A and B.  Mr. Infantino had no objection.  These have been admitted so they'll be given to you in the jury room for your review when you deliberate.

{¶46} "After Mr. Williams asked me to admit those exhibits he then informed me that he was resting his case against Mr. Lucas on the charges in the indictment relating to both of the dates, November 19th, 2007 and January 2nd, 2008.

{¶47} "I then asked Mr. Infantino if he was going to present evidence in the defense of the indictment and he indicated to me that he was resting without presenting evidence.  So there will be no defense evidence in the case and remember my

instruction about that. And then Mr. Williams of course would have no rebuttal evidence because there's no defense evidence that's going to be able to be rebutted, or attempt to rebut could be made.

{¶48} "So, the evidence is closed, all the evidence relating to these charges is now presented to you." T. at 168-169.

{¶49} There is no evidence in the record that appellant wished to testify.

{¶50} Appellant also claims his trial counsel's cross-examination of the witnesses was limited and at times non-existent. Defense counsel had no reason to extensively cross-examine Mr. Shrock and Mrs. McPherson. They were referred to in closing argument as "the Ward Clever's of the world." T. at 216. The deputies who testified added nothing to the contested facts of the case, the identification of the offenders.

{¶51} We have reviewed the entire transcript and find only one deficiency. During the cross-examination of David Cleveland, defense counsel asked, "Okay. How did you know about the safe?" and the response was, "Because my brother told me he was gonna get it." T. at 142. The prosecutor then asked him on re-direct "Mr. Infantino asked you basically what Tim Cleveland told you. Did he indicate that Mr. Lucas was involved in the break-in at Stoney Point?" T. at 144. David responded, "Yes, he did." Id.

{¶52} Under the second prong of *Bradley,* supra, we find the questions that were left open by the cross-examination did not affect the outcome of the trial. As we found in Assignment of Error I, there were sufficient separate admissions by appellant of his own culpability to establish necessary proof despite the cited question.

{¶53}  Assignment of Error II is denied.

{¶54}  The judgment of the Court of Common Pleas of Tuscarawas County, Ohio

is hereby affirmed.

By Farmer, P.J.

Edwards, J. and

Delaney, J. concur.


_s/ Sheila G. Farmer_____


_s/ Julie A. Edwards_____


s/ Patricia A. Delaney_____

JUDGES


SGF/sg 706

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BENJAMIN LUCAS | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 10AP120047 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio is affirmed. Costs to appellant.


_s/ Sheila G. Farmer_____


_s/ Julie A. Edwards_____


s/ Patricia A. Delaney_____

JUDGES